**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**

CIVIL ACTION NO. 4:20-CV-00203-JHM

CHARLES MAYO HENSON                                                    PLAINTIFF

v.

JAMES WYATT, *et al.*                                                  DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on the Defendants' Motion for Summary Judgment [DN 18]. Fully briefed, this matter is ripe for decision. For the following reasons, the Motion for Summary Judgment is **GRANTED**.

### I.     BACKGROUND

The Plaintiff, Charles Mayo Henson ("Henson"), has been a pretrial detainee at the Daviess County Detention Center ("DCDC") since October 2020. *See* [DN 1]. Based on the nature of his crime, Henson resides in a protective custody cell. [DN 23 at 1]. He asserts the conditions in that cell constitute cruel and unusual punishment under the Eighth Amendment. [DN 1 at 4]. According to Henson, the DCDC overcrowded his cell by housing over forty men in the space. [*Id.*]. Within this space, the toilets and urinals flood, causing "fluid" to pool in the cell's bathroom. [*Id.*]; [DN 23 at 2]. These puddles allegedly contain "pubic hair, urine, sperm, snot, bugars [sic] and etc.[,]" which detainees track into the cell. [*Id.*]. Given spatial constraints, Henson and other detainees must sleep on mats on the floor; the water forces them "to put trash bags on [their] beddings [sic] to keep them dry." [*Id.*]. Furthermore, Henson observed "[b]lack mold growing on the walls and vents." [DN 23 at 1].

Throughout Henson's detention, DCDC officials have taken steps to ameliorate the alleged conditions.  At least once a day, officers bring cleaning supplies to the cell.[1]  [DN 23 at 2].  They also spray bleach in the cell—though it is unclear how often.  [DN 17 at 15]. Maintenance staff inspected Henson's cell and informed him they could not fix the water pooling problem because "the floor is unlevel."  [DN 23 at 3].  Other facility personnel, including Major Deputy Joseph Moore ("Moore"),[2] investigated Henson's complaints and brought in the cleaning cart.  [DN 23 at 2–5].  On multiple occasions, Moore notified Henson that he could transfer from the protective order cell into a less-crowded general population cell, [DN 17 at 10–11, 15]; Henson repeatedly rejected this offer, anticipating other inmates would harm him for "the charge that [he] had against [him]."  [DN 23 at 4].

In this suit under 42 U.S.C. § 1983, Henson named the DCDC; Moore; Jailer Arthur Maglinger ("Maglinger"); and Lieutenant Deputy James Wyatt ("Wyatt") as Defendants (collectively "the Defendants").  [DN 1].  Upon its initial review under 28 U.S.C. § 1915A, the Court replaced the DCDC with Daviess County ("the County") and allowed the complaint to proceed against the other Defendants in their individual and official capacities.  *See* [DN 6].  The Court now addresses the Defendants' Motion for Summary Judgment on those claims.  [DN 18].

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a

---

[1] It is unclear how often officials brought the cleaning cart.  Henson states they brought it "once every morning[,]" [DN 23 at 2];  Moore said it was brought "twice a day . . . ."  [DN 17 at 15].

[2] Henson calls Moore both "Sergeant" and "Major Deputy."  *Compare* [DN 23-1 at 5] *with* [DN 1 at 2].  Neither title changes the result of this case.

genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]."  *Anderson*, 477 U.S. at 252.

The fact that a plaintiff is pro se does not lessen his obligations under Rule 56.  "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citation omitted).  The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); see also *United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a pro

se plaintiff because he "failed to present any evidence to defeat the government's motion"). However, statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

### III. DISCUSSION

Henson's sole claim alleges the conditions of his confinement at the DCDC violated the Eighth Amendment. *See* [DN 1]. He sued the Defendants in their individual and official capacities. The Court addresses each of these claims in turn.

### A. Individual Capacity Claims

Henson sued three DCDC officers—Wyatt, Maglinger, and Moore—in their individual capacities, contending the conditions of his confinement violated the Eighth Amendment. U.S. Const. amend. VIII. "The Eighth Amendment provides an inmate the right to be free from cruel and unusual punishment. The Due Process Clause of the Fourteenth Amendment provides the same protections to pretrial detainees." *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018). These claims "are analyzed under the same rubric as Eighth Amendment claims . . . ." *Villegas v. Government of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013).

Conditions of confinement claims have two elements. "First, the deprivation alleged must be, objectively, 'sufficiently serious[.]'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation omitted). Second, "a prison official must have a 'sufficiently culpable state of mind.'" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)). At this stage, Henson must identify evidence supporting both elements.

### 1. Objective Component

Under the Eighth Amendment, conditions must deny "the minimal civilized measure of

life's necessities." *Farmer*, 511 U.S. at 834.  "[T]he inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.*  The Supreme Court has said "conditions of confinement may establish an Eighth Amendment violation 'in combination' . . . when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need . . . ." *Seiter*, 501 U.S. at 304.  Additionally, "the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards." *Hutto v. Finney*, 437 U.S. 678, 686 (1978).  However, "the Constitution does not mandate comfortable prisons[.]" *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).

Henson contends his detention conditions deny him proper sanitation.  *See* [DN 1]. "Sanitary living conditions . . . are among the necessities of life protected by the Eighth Amendment." *Gilland v. Owens*, 718 F. Supp. 665, 684 (W.D. Tenn. 1989).  To start, while "overcrowding is not, in itself, a constitutional violation[,]" *Agramonte v. Shartle*, 491 F. App'x 557, 560 (6th Cir. 2012), this condition forces Henson to sleep on the floor on a "mat that was less than a half inch thick."  [DN 1 at 5].  These sleeping arrangements do not violate the Constitution.  *See, e.g., Edwards v. Warren Cnty. Reg'l Jail*, No. 1:17-CV-P137, 2018 WL 445115, at *4 (W.D. Ky. Jan. 16, 2018).  But Henson argues the toilets create "large puddles" on the bathroom floor, allowing his cellmates to track water and bodily fluids throughout the cell near his mat.  [DN 1 at 4].  Although temporary exposure to human waste because of flooding does not satisfy the objective component, *Lamb v. Howe*, 677 F. App'x 204, 208 (6th Cir. 2017); *Dellis Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001), Henson's exposure was not temporary—at the time he initiated this suit, he had endured these conditions for nearly two months.  *See* [DN 1].  Yet "courts have held that even fairly long exposure will not satisfy the

objective component . . . in the absence of any physical harm." *Still v. Davis*, No. 1:16-cv-640, 2018 WL 1202827, at *5 (S.D. Ohio Mar. 8, 2018) (collecting cases).

Alongside the sanitary issues arising from his sleeping arrangement, Henson identifies "black mold in the showers." [DN 1 at 4–5]. The Defendants assured him this was mildew. [DN 17 at 16]. "The mere allegation of the presence of some mold does not create a condition intolerable for prison confinement." *Lyons v. Wickersham*, No. 2:12-CV-14353, 2012 WL 6591581, at *4 (E.D. Mich. Dec. 18, 2012) (internal quotation omitted); *see also Juliot v. Osborne*, No. 4:14CV-P1, 2014 WL 4259429, at *4 (W.D. Ky. Aug. 27, 2014). To succeed, a plaintiff must provide evidence "the presence of mold has caused him any health problems or that he is presently at any substantial risk to this health." *Id.* Henson's Complaint divulges "migranes [sic] and small colds" from "sleeping on the floor in these conditions." [DN 1 at 5]. Still, he has not provided evidence connecting these problems to the alleged mold.

At any rate, the evidence shows the sanitary conditions did not pose an "excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Henson concedes officials provided cleaning supplies once—if not twice—a day and bleached the cell. [DN 17 at 15]. Moreover, Henson acknowledged that "you can't see the problems if you come right in after [the detainees] clean it with the cleaning cart." [DN 17 at 12]. While also relevant in the subjective analysis below, this evidence shows the DCDC's daily cleaning practices regularly resolved any potential harms caused by unsanitary conditions. *See Ruiz-Bueno v. Scott*, 639 F. App'x 354, 362–63 (6th Cir. 2016) (granting summary judgment when officers regularly cleaned cell). Thus, the allegations here do not rise to an Eighth Amendment violation.

**2. Subjective Component**

Even if the conditions were "sufficiently serious," Henson must also prove the

Defendants acted with "'deliberate indifference' to inmate health or safety." *Farmer,* 511 U.S. at 834 (citing *Wilson,* 501 U.S. at 297). Under this standard, "an official must 'know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Wilson v. Williams,* 961 F.3d 829, 839–40 (6th Cir. 2020) (quoting *Farmer,* 511 U.S. at 837). "[O]fficials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844. The Court must apply this standard to each Defendant individually.

### a. James Wyatt

Across his pleadings, Henson never mentions Wyatt by name. *See generally* [DN 1; DN 17; DN 23]. Wyatt's name appears once in the record on an inmate resolution grievance communication. [DN 17 at 5]. In that exhibit, Henson requests a "tub" for his sleeping mat to avoid the "unsanitary" floor; Wyatt denies this request, but he prompts Henson to exchange his mat for another. [*Id.*]. This reference does not show Wyatt knew of the alleged conditions or that he was deliberately indifferent. The Court **GRANTS** the Defendants' Motion for Summary Judgment on Henson's individual capacity claims against Wyatt.

### b. Arthur Maglinger

Again, Henson's pleadings never mention Maglinger or articulate a theory of liability. *See generally* [DN 1; DN 17; DN 23]. He supplies no evidence Maglinger was "deliberately indifferent" to his alleged injury.[3] The Court **GRANTS** the Defendants' Motion for Summary Judgment on Henson's individual capacity claims against Maglinger.

---

[3] One exhibit mentions Maglinger. [DN 17 at 9]. In a grievance form, Henson complained about the unlevel floor, body waste, and black mold. [*Id.*]. Henson submitted that form after he initiated this suit, however. [*Id.*]. Maglinger responded that "the maintenance deputy will continue to follow up on any maintenance complaints through the grievance procedure process." [*Id.*]. Alone this evidence cannot prove deliberate indifference.

### c. Joseph Moore

Unlike the other named Defendants, Henson's filings mention Moore. According to Henson, on December 15, 2020, Moore visited the cell, investigated the shower, witnessed a puddle of bodily fluids, and placed a cleaning cart within the cell. [DN 23-1 at 5]. This interaction does not display deliberate indifference—if anything, it shows Moore intentionally took actions to resolve the alleged sanitary issues.

Additionally, Moore responded to multiple grievance complaints. *See generally* [DN 17 at 5–16]. These exhibits reveal Moore's knowledge of the cell conditions and actions he took to assist Henson. On multiple occasions, Moore offered to switch Henson to another cell. [*Id.* at 10–11, 15]. He advised Henson, "If you do decide that you want to move to a less crowded cell, just write into cell movements and we will move you." [*Id.* at 10]. Notably, Henson remained in his cell, fearing other inmates would harm him for "the charge that [he] had against [him]." [DN 23 at 4]. No evidence justifies this concern. *See Thompson v. County of Medina*, 29 F.3d 238, 242 (6th Cir. 1994) (recognizing a prisoner's "reasonable fear" of attack). The Eighth Amendment analyzes whether it "violates contemporary standards of decency to expose anyone *unwillingly* to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis added). Moore was not "deliberately indifferent" to Henson's alleged suffering—he repeatedly offered to transfer Henson to a different cell.

The Court **GRANTS** the Defendants' Motion for Summary Judgment on Henson's individual capacity claims against Moore.

### B. Official Capacity Claims

Additionally, Henson sued the individual Defendants in their official capacity. "Official capacity suits . . . 'generally represent [ ] another way of pleading an action against an entity of

which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n.55 (1978)). He also sued the DCDC. In its previous opinion, the Court dismissed this Defendant, recognizing the "the claims against the DCDC are actually against [the] County as the party in interest." [DN 6 at 2] (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)). Therefore, the remaining claims focus on whether the County can be held liable for the purported conduct.

The Court must "analyze two different issues when a § 1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). "[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. A plaintiff must identify a "policy or custom" to hold the municipality liable under § 1983. *Id.* at 694. The Sixth Circuit has four methods for proving a "policy or custom": "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

Henson's official capacity claims must fail. Nowhere does he cite an "official policy" or a "policy of inadequate training or supervision." *Burgess*, 735 F.3d at 478. Henson has cited no evidence that Maglinger "ratified" any illegal actions. *Young v. Campbell Cnty.*, 846 F. App'x 314, 323 (6th Cir. 2021) (finding a jailer had "final decision making authority"). Lastly, he has provided no evidence that the County engaged in a "custom of tolerance or acquiescence of

federal rights violations." *Id.* In sum, Henson's pleadings do not show a "policy or custom" by any definition. *Monell*, 436 U.S. at 694. The Court **GRANTS** the Defendants' Motion for Summary Judgment on Henson's official capacity claims.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [DN 18] is **GRANTED**. The Court will enter a judgment consistent with this opinion.

*Joseph H. McKinley*

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:   Charles Mayo Henson, *pro se*
      counsel of record

March 16, 2022

10